**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**DR. GEOFFREY H. THOMAS, SR. and**
**MARY T. THOMAS,**

                **Plaintiffs,**

**v.**                                       **Civil Action No. 2:05cv572**

**STANDARD FIRE INSURANCE COMPANY,**
**t/a TRAVELERS**

                **Defendant.**


**OPINION and ORDER**

This matter comes before the court on the defendant's "Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)" filed on November 28, 2005 and the plaintiffs' "Motion for Summary Judgment" filed on January 3, 2006.  The court has reviewed the parties' supporting memoranda and attached exhibits and finds that a hearing is unnecessary for the resolution of the issues presented.  For the reasons set out herein, the court **GRANTS** the defendant's motion for judgment on the pleadings. Accordingly, the plaintiffs' motion for summary judgment is **DISMISSED AS MOOT**.

**I. Procedural Background**

On September 28, 2005, the plaintiffs, Dr. Geoffrey H. Thomas, Sr. and Mary T. Thomas, filed a Complaint against the defendant, Standard Fire Insurance Company ("Standard Fire"), alleging breach of insurance contract as a result of Standard Fire's refusal to pay plaintiffs' claim for increased cost of compliance under an excess flood insurance policy. The defendant filed its Answer on November 23, 2005.

On November 28, 2005, the defendant filed the instant motion for judgment on the

1

pleadings. The plaintiffs filed their response to the defendant's motion for judgment on the pleadings on December 12, 2005. The defendant filed its reply brief on December 15, 2005. On December 22, 2005, the matter was referred to this court for review. On January 3, 2006, the plaintiffs filed their motion for summary judgment. On January 23, 2006, the defendant filed a response to plaintiffs' motion for summary judgment. Because the court is granting the defendant's motion for judgment on the pleadings, the plaintiffs' motion for summary judgment is moot, and the court finds it unnecessary to wait for the plaintiffs' reply to that motion.

## II. Factual Background

The relevant facts to this motion are not in dispute. As the matter is before the court on the defendant's motion for judgment on the pleadings, the following facts are construed in the light most favorable to the plaintiffs, the non-moving party. O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000) (citing Zeran v. America Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997))(Citations omitted).

In 2003, the plaintiffs held two Standard Fire flood insurance policies, a  Standard Flood Insurance Policy ("SFIP") and an Excess Flood Policy ("EFP"), covering the plaintiffs' house located at 5523 White Hall Road, Gloucester, Virginia. Standard Fire issued the SFIP under the National Flood Insurance Program's Write-Your-Own Program. The SFIP, unlike the EFP, is a codified federal regulation and contains terms and conditions that are mandated by the federal government. 44 C.F.R. § 61 app. A(1) (2005).  The SFIP in this case had a policy period from August 25, 2003 to August 25, 2004; the EFP had a policy period from September 30, 2002 to September 30, 2003.

Under the SFIP, as regulated by the National Flood Insurance Program, an insured can purchase up to $250,000.00 of flood insurance for a residential property. See 44 C.F.R. § 61.6(a)

(2005). The SFIP includes four different areas of coverage: (1) Coverage A - Building Property; (2) Coverage B - Personal Property; (3) Coverage C - Other Coverages; and (4) Coverage D - Increased Cost of Compliance ("ICC"). (SFIP at Art. III.)   The declarations page of the SFIP states that the plaintiffs purchased the full $250,000.00 limit for Coverage A - Building Property, but did not purchase Coverage B - Personal Property coverage. (See SFIP Declarations Page.) The policy states that Coverage A - Building coverage insures "against direct physical loss by or from flood to: 1. The dwelling . . . ." (SFIP at Art. III.A.(1).) The definitions section of the SFIP defines "direct physical loss by or from flood" as the following: "Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property." (Id. at Art. II.B(12).)   The declarations page of the SFIP shows that the plaintiffs paid a $940.00 premium, less discounts, for the Building coverage.

The declarations page of the SFIP also shows that the plaintiffs paid a premium of $60.00 for ICC. (SFIP Declarations Page.) The SFIP states that ICC coverage is the amount that the SFIP pays to the insured "to comply with State or local flood plain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." (Id. at Art. III.D(1).)   Eligible activities for ICC payment are: elevation, floodproofing, relocation, or demolition of the structure. (Id.) The amount of coverage for ICC is limited to $30,000.00, which is included within, and not in addition to, the total $250,000.00 coverage limit. (Id. at Art. III.D(2).)

In addition, the relevant portion of the "EXCLUSIONS" section of the SFIP states:

A.      We only provide coverage for **direct physical loss by or from flood**, which means that we do not pay you for: . . .
6.      The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage D -

3

Increased Cost of Compliance.

(SFIP Art. V.A.(6).)

As stated above, in addition to the SFIP, the plaintiffs also purchased an EFP from Standard Fire. The EFP states in part:

> [W]e insure your property designated in the **declarations page** against **DIRECT PHYSICAL LOSS BY OR FROM FLOOD** as defined and as insured against in the **underlying flood insurance policy.** We pay for that amount of loss which is in excess of the required Policy Limit listed on the declarations page of the **underlying flood insurance policy.**

(EFP Art.1.)(Emphasis in original).

The declarations page of the EFP states that it provides coverage for "BUILDINGS" in the amount of $100,000.00. In addition, the EFP provides that, "This **policy** is subject to the same terms, conditions, agreements, exclusions and definitions as the **underlying flood insurance policy**, except with respect to any provisions to the contrary contained in this **policy**." (EFP Art. 3.) (Emphasis in original).

On September 18, 2003, the plaintiffs' house, located at 5523 White Hall Road, was damaged by flooding as a result of Hurricane Isabel. The plaintiffs filed claims with Standard Fire under both the SFIP and the EFP. Under the SFIP, Standard Fire paid the plaintiffs $250,000.00 in benefits for damages to the plaintiff's house. The $250,000.00 amount included $30,000.00 for ICC. These amounts are not at issue in this case.

However, Standard Fire denied the plaintiff's claim under the EFP, which was solely for the balance of the plaintiffs' ICC in excess of the $30,000.00 limit paid under the SFIP. Specifically, the plaintiffs claimed in excess of $100,000 under the EFP. Standard Fire argues that the EFP, unlike the SFIP, only provides coverage for direct physical loss by or from flood to the Building, not for ICC expenses. On September 28, 2005, the plaintiffs filed a Complaint

against Standard Fire for breach of insurance in an amount of $100,000 plus interest.

## II. Standard of Review

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "Judgment should be entered [in favor of the movant] when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000) (citing Zeran v. America Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997))(Citations omitted).

## III. Discussion

The parties do not dispute the relevant facts in this case. Instead, the disagreement revolves around the interpretation of the SFIP and EFP. Specifically, the parties disagree as to whether the EFP provides coverage for ICC. The plaintiffs argue that the phrase "direct physical loss by or from flood" inherently includes the increased cost of complying "with State or local flood plain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." (SFIP at Art. III.D(1).)  However, the defendant claims that ICC is not included in the definition of "direct physical loss by or from flood" because that phrase requires physical changes to the property. After reviewing both the SFIP and the EFP, this court finds that the EFP does not provide coverage for ICC because (1) the plain language of the EFP shows that the EFP does not provide coverage for ICC and (2) the plaintiffs did not pay a premium for ICC

under the EFP, but did pay a premium for ICC under the SFIP.

**A.      The plain language of the EFP shows that the EFP does not provide coverage for ICC**

The plain language of the EFP supports a finding that the EFP does not provide coverage for ICC. In reviewing the insurance policies at issue in this case, the court notes that "[f]ederal common law controls the interpretation of insurance policies issued pursuant to the National Flood Insurance Program." Leland v. Federal Ins. Adm'r, 934 F.2d 524, 529-30 (citing Sodowski v. National Flood Ins. Program, 834 F.2d 653, 655 (7th Cir. 1987)). However, "the exclusive governance of federal common law in resolving interpretative questions concerning insurance policies issued pursuant to the NFIP does not preclude federal courts from drawing upon the body of standard insurance law principles in resolving such questions." Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 608 (4th Cir. 2002)(citing Leland, 934 F.2d at 529-30). Under standard insurance law principles, "where the language and meaning [of a policy] is clear and unambiguous it is to be understood in its plain, ordinary and popular sense; but in case of ambiguity, that construction is to be adopted which is most favorable to the insured." Equitable Life Assurance Soc. v. Deem, 91 F.2d 569, 571 (4th Cir. 1937). However, "it is not permissible for courts by a strained and over-refined construction of ordinary words to create an ambiguity which would not otherwise exist." Id. at 575.

**1.      Definition of "direct physical loss by or from flood" does not include losses for ICC**

After reviewing both the SFIP and the EFP, the court finds that it is clear from the plain language of the SFIP and the EFP that the definition of "direct physical loss by or from flood" does not include losses for ICC.  Article 1 of the EFP states:

> [W]e insure your property designated in the **declarations page** against **DIRECT PHYSICAL LOSS BY OR FROM FLOOD** as defined and as insured against in

6

the **underlying flood insurance policy.** We pay for that amount of loss which is in excess of the required Policy Limit listed on the declarations page of the **underlying flood insurance policy.**

(EFP Art.1.)(Emphasis in original).

The underlying flood insurance policy, the SFIP, defines **"direct physical loss by or from flood"** as: "Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property." (Id. at Art. II.B(12).)  In other words, to qualify as direct physical loss, the loss must result from actual damage to the insured property.

ICC does not fall under this definition because ICC expenses are not physical losses to the insured structure; instead, ICC expenses are incurred in addition to the physical losses sustained as a result of flooding. For example, if a homeowner's $100,000.00 house is completely destroyed by flood, the homeowner has suffered a $100,000.00 physical loss. To replace the house *exactly as it existed before the flood*, it will cost the homeowner $100,000.00, excluding any changes that will have to be made to the structure based on State or local flood plain management law. This $100,000.00 cost is the amount of direct physical loss incurred by the homeowner. Any costs that the homeowner incurs in addition to the $100,000 resulting from mandatory improvements to the structure required by flood plain management law are compliance costs, not actual physical loss. These compliance costs, or ICC, are not included under the definition of "direct physical loss by or from flood" because the loss did not result from *actual physical changes* to the structure. Thus, because the EFP only covers "direct physical loss by or from flood" as defined by the SFIP, it does not cover ICC. Thus, the plaintiffs are not entitled to payment under the EFP because their $100,000.00 claim under that policy is only for ICC.

The plaintiffs argue that because the SFIP states that it only provides coverage for "direct

7

physical loss by or from flood", yet also expressly provides coverage for ICC, that ICC must necessary fall within the definition of "direct physical loss by or from flood." Thus, the plaintiffs argue that the EFP, which also only provides coverage for "direct physical loss by or from flood", must also provide coverage for ICC. However, the court finds that this argument is in direct conflict with the actual language of both the EFP and the SFIP and the distinction between "direct physical loss by or from flood" and ICC that the government intended when it drafted the SFIP.

The SFIP makes a distinction between  "direct physical loss by or from flood" and ICC by listing the provided coverages under separate sections of the policy. Article III, entitled "Property Covered" is broken down into four different sections:  (1) Coverage A - Building Property; (2) Coverage B - Personal Property; (3) Coverage C - Other Coverages; and (4) Coverage D - Increased Cost of Compliance ("ICC"). (SFIP at Art. III.)  The policy states that Coverage A - Building coverage insures "against **direct physical loss by or from flood** to: 1. The dwelling . . . ." (Id.)(Emphasis in original).  Coverage B - Personal Property coverage, which the plaintiffs did not purchase, insures "against **direct physical loss by or from flood** to personal property inside a building at the described location." (SFIP at Art. III.B.(1).)(Emphasis in original). Coverage C - Other Coverages, which is not at issue in this case, and Coverage D - ICC do not include the phrase "direct physical loss by or from flood" in their descriptions of coverage. Thus, the plain language of the SFIP supports a finding that the benefits included in both Coverage C and D are based on something other than "direct physical loss by or from flood."

In addition, the Federal Emergency Management Agency's comments to the final proposed rule, which discuss ICC coverage when it was first added to the SFIP, note the

distinction between coverage for "direct physical loss by or from flood" and ICC.  In discussing the amount of coverage for ICC that should be allowed under the National Flood Insurance Program, FEMA noted that "the ICC benefit would be added to the policy limit for direct loss from flood, but the total payment for the ICC benefit *and* the direct loss payment for flood would not be greater than the maximum limits of coverage for that class of structure authorized under the Act." <u>See</u> National Flood Insurance Program; Standard Flood Insurance Policy, 62 Fed. Reg. 8391, 8392 (Feb. 25, 1997)(Emphasis added). By distinguishing between ICC benefits and "direct loss payment for flood", the comments show that, in drafting the SFIP, FEMA intended ICC coverage to be distinct from coverage for "direct physical loss by or from flood", even though the two would be added together in determining the cap on coverage as a whole. Accordingly, the court finds that ICC is not included within the definition of "direct physical loss by or from flood."

> ### 2.    The EFP explicitly limits insurance to Building and Contents Coverage

Another reason that supports this court's finding that the EFP does not provide coverage for ICC is that the EFP explicitly states that it only provides Building and Contents coverage. Article 5 of the EFP, entitled "Limit of Insurance", states: "The **Limit of Insurance** is the amount of **Building** and Contents Coverage listed on the declarations page and is the most we will pay under this **policy** for each flood loss." (EFP Art. 5) (Emphasis in original). The declarations page of the EFP only lists "BUILDINGS", with a limit of insurance of $100,000.00. The plaintiffs chose not to purchase Contents coverage. Neither the declarations page nor Article 5 mentions coverage for ICC. In fact, the EFP does not mention ICC coverage at all in any of its provisions. Based on the plain language of the EFP, this court finds that the EFP does not provide coverage for ICC. There is nothing in the contract to support a contrary finding.

However, the plaintiffs point to Article 3 of the EFP, read in conjunction with Exclusion A(6) of the SFIP, to support their argument that the EFP includes coverage for ICC. Article 3 of the EFP states: "This **policy** is subject to the same terms, conditions, agreements, exclusions and definitions as the **underlying flood insurance policy,** except with respect to any provisions to the contrary contained in this **policy**." (EFP Art.3)(Emphasis in original). Exclusion A(6) of the SFIP provides:

> A.   We only provide coverage for direct physical loss by or from flood, which means that we do no pay you for: . . .
> 6.   The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in **Coverage D -** Increased Cost of Compliance.

(SFIP Art.V.A(6))(Emphasis in original).

The plaintiffs claim that Exclusion A(6) means that eligible activities under Coverage D - ICC are included in the definition of "direct physical loss by or from flood"; thus, the EFP, which covers "direct physical loss by or from flood", should also provide coverage for ICC. The plaintiffs contend that any ambiguity in the meaning of these provisions should be construed against Standard Fire, the drafter of the EFP.

This court rejects the plaintiffs' argument and finds that Exclusion A(6) actually supports the court's finding that ICC is not included in the definition of "direct physical loss by or from flood." Furthermore, there is no ambiguity in the meaning of the SFIP and EFP. Exclusion A(6) clearly states that costs associated with complying with any ordinance or law are not considered "direct physical loss by or from flood."  The fact that the exclusion creates a carve out for the *limited* coverage set forth in Coverage D - ICC does not mean that Coverage D is considered "direct physical loss by or from flood." Instead, the carve out makes it clear that the ICC

coverage set forth in Coverage D is simply an exception to the general prohibition against coverage for compliance costs; it is not proof that ICC is included in the definition of "direct physical loss by or from flood." Accordingly, the plaintiffs' argument is without merit.

   **B.     The plaintiffs did not pay a premium for ICC under the EFP, but did pay a premium for ICC under the SFIP**

The final reason that this court finds that the EFP does not provide coverage for ICC is that, under the EFP, the plaintiffs did not pay a premium for ICC, but did pay a premium for ICC under the SFIP. The declarations page of the SFIP shows that the plaintiffs paid a $60.00 premium for ICC coverage under the SFIP. This premium was separate and distinct from the premium they paid for Building coverage. In fact, the SFIP declarations page has a separate line item entitled "Increased Cost of Compliance Premium" included in the itemized list of total premiums paid. However, the plaintiffs did not pay a premium for ICC under the EFP. The declarations page of the EFP only includes a line item for the "BUILDINGS" premium; it does not mention ICC. Thus, it is clear that the plaintiffs did not pay for ICC under the EFP. Accordingly, the plaintiffs are not entitled to ICC benefits under the EFP.

Although it is unfortunate that the combination of the SFIP and EFP will not make the plaintiffs entirely whole, it does not change the fact that the plain language of the policies demonstrates that the EFP does not include coverage for ICC. This finding is in line with FEMA's justification for limiting ICC coverage under the SFIP, which it articulated in its comments to the proposed rule when it originally introduced limited ICC coverage to the National Flood Insurance Program. FEMA explained that a limit on ICC coverage is mitigated by the fact that "there should be a commensurate increase in the value of the [insured's] property that will offset at least part of those costs." See National Flood Insurance Program; Standard Flood Insurance Policy, 62 Fed. Reg. 8391, 8392 (Feb. 25, 1997). Thus, the plaintiffs' property

should also have had a commensurate increase in value to offset the ICC expenses.

## IV. Conclusion

Based on the plain reading of both the SFIP and the EFP, this court finds that ICC is not included in the definition of "direct physical loss by or from flood." Thus, the EFP does not provided coverage for ICC. Therefore, construing the facts in the light most favorable to the plaintiffs, this court finds that the plaintiffs are unable to state any cognizable claim for relief, and are not entitled to ICC benefits under the EFP. Accordingly, the court **GRANTS** the defendant's motion for judgment on the pleadings. Based on this ruling, the plaintiffs' motion for summary judgment is **DISMISSED AS MOOT**.

The Clerk is **REQUESTED** to mail copies of this order to counsel for all parties.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 27th, 2006

12